[Cite as *In re I.K.*, 2011-Ohio-4512.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   96469

---

# IN RE:   I.K.
# A Minor Child

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No.   AD 09922449

**BEFORE:**   Keough, J., Stewart, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:**   September 8, 2011

**ATTORNEY FOR APPELLANT**

Jeffrey Froude
P.O. Box 761
Wickliffe, OH 44092


ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor

BY:   Amy L. Carson
Assistant Prosecuting Attorney
C.C.D.C.F.S.
8111 Quincy Avenue
Cleveland, OH 44104
KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant-father ("appellant"), appeals from the judgment of the Common Pleas Court, Juvenile Division, granting permanent custody of his minor child, I.K., to appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS").[1]   For the reasons that follow, we affirm.

{¶ 2} In December 2009, CCDCFS filed a complaint alleging dependency and requesting a disposition of permanent custody of I.K., a minor child.   The child was committed to the emergency custody of CCDCFS.   In 2010, appellant and I.K.'s mother entered an admission to an amended complaint and the child was adjudged to be a dependent child.

---

[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.

{¶ 3} In January 2011, the trial court held an evidentiary hearing on CCDCFS's motion for permanent custody. Following the hearing, the trial court granted permanent custody of I.K. to CCDCFS. Appellant appeals from this order, raising three assignments of error challenging the trial court's decision in committing the minor child to the permanent custody of CCDCFS.[2]

{¶ 4} A trial court's decision to award permanent custody will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Adoption of Lay* (1986), 25 Ohio St.3d 41, 42, 495 N.E.2d 9. Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54.

{¶ 5} R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that (1) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private

---

[2]This appeal only addresses the facts as they pertain to appellant. I.K.'s mother has not filed an appeal.

children services agencies for twelve or more months of a consecutive twenty-two month period, and (2) granting permanent custody of the child to the agency is in the best interest of the child. R.C. 2151.414(B)(1).

{¶ 6} "Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to cause a trier of fact to develop a firm belief or conviction as to the facts sought to be established." *In re T.S.*, Cuyahoga App. No. 92816, 2009-Ohio-5496, ¶24, citing *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 104, 495 N.E.2d 23.

{¶ 7} In this case, the trial court determined that I.K. could not be placed with either parent within a reasonable period of time or should not be placed with his parents. R.C. 2151.414(B)(1)(a). Appellant contends in his first assignment of error that the trial court erred in making this determination.

{¶ 8} When determining whether a child can be placed with either parent within a reasonable period of time, the court must consider R.C. 2151.414(E), which provides that if the court determines at a hearing that one or more of the factors set forth in that section exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent.

{¶ 9} In this case, the court determined that factors (1), (4), (10), and (11) of R.C. 2151.414(E) existed. However, the existence of any one of these

factors is sufficient to determine that a child cannot be placed with a parent within a reasonable period of time. *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶10, citing *In re William S.* (1996), 75 Ohio St.3d 95, 661 N.E.2d 738.

{¶ 10} Under R.C. 2151.414(E)(1), the court must consider "whether, despite reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside their home.

{¶ 11} Under R.C. 2151.414(E)(4), the court must also consider whether "[t]he parent demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."

{¶ 12} In this case, the trial court addressed these two factors together, stating that "the father remains unable to care for his child despite establishing paternity. Notably, he [has] not asked for reunification but a six month extension of temporary custody. CCDCFS, the mother[,] and the GAL all expressed significant concern about the fact that the father has six children

altogether, does not have custody of any of them[,] and has not consistently supported any of them. He has a substantial support arrearage according to CSEA records. He has no current means of supporting this child. CCDCFS has repeatedly asked the father to provide records verifying his income, and the father has repeatedly failed to provide such records. His only source of income may be rental income, half of which comes from a roommate who smokes (and who would have to leave if the child were reunified with the father). Even this income is/has been unverifiable as the father admits he has not filed a tax return since at least 2007.

{¶ 13} "The Court has serious concerns about the father's ability to care for the child's asthma. The father has not educated himself on how to care for the child's asthma. He did not attend doctor appointments for the child and his housing remains unfit for the child given the presence of the smoking tenant. He has no provisions for the child in his home."

{¶ 14} Appellant argues that the trial court erred in relying on the factors in R.C. 2151.414(E)(1) and (4) because the evidence did not clearly and convincingly show that he failed to remedy the conditions that caused I.K. to be taken from the home, and further, because he had fully complied with CCDCFS's case plan and it was unfair for the trial court to rely on requirements not included in the case plan in its consideration of permanent

custody. Appellant argues that the trial court's denial of custody to him "can only be seen as a failure of the Agency, [i.e. CCDCFS] to provide a reasonable case plan and apply diligent efforts to assist [him]." Specifically, appellant contends that CCDCFS never required him to get training regarding I.K.'s asthma as part of his case plan.

{¶ 15} Appellant also argues that he demonstrated commitment toward I.K. by visiting and spending time with him and showed a willingness to provide I.K. an adequate, permanent home for him because he asked for an extension of temporary custody so that he could remedy the trial court's concerns regarding unverified income and his smoking live-in tenant.

{¶ 16} The record supports the trial court's findings. Laura Howe, a social worker for CCDCFS, testified that the father's case plan requirements included stable housing and income and paternity establishment. Howe testified that she had concerns about the condition of the house because the house was "very transient like" due to the fact that there was always someone new living in the home. At the time of removal, the home where appellant was residing was inappropriate for I.K. because the windows were boarded up, the inside was "torn up," and there were no provisions for a baby. Howe noted that although appellant made some improvements on his home since removal, at her last visit (approximately one month before trial), the house was not

completely done and still had no provisions or room for the child. Appellant did testify at trial that he had a room for I.K. with a bed and a dresser in the room.

{¶ 17} Nevertheless, Howe was also concerned because when she went to visit appellant's home, she discovered ashtrays with cigarettes butts and ashes in them. Testimony was given by the parties that I.K. suffers from asthma and appellant's roommate tenant was a smoker. Howe testified, "[t]his child has severe asthma, and I had throughout the course of this case attempted to educate both mom and dad on the dangers of having the nicotine even in the home or on somebody's clothing because it can trigger a child's asthma attack." Despite this knowledge, appellant still allowed the renter to smoke inside the home. When questioned as to whether she felt appellant understood the severity of the child's special needs regarding asthma, Howe responded, "No, I do not."

{¶ 18} In fact, when appellant was questioned regarding whether he had ever consulted with a doctor regarding I.K.'s asthmatic condition, he responded, "no" and explained, "[w]ell, I was waiting right — you know, for the right time, you know, time to get the training or whatever I needed. * * * Anytime's a right time, you know, to me, but like I said, I've been going to the visits and I'm just waiting for, you know, whenever I actually really had to get

it done, you know." I.K.'s foster mother testified that I.K. would suffer asthmatic symptoms after visiting appellant requiring her to give him a treatment with a nebulizer or take him to the doctor. In fact, Howe testified that visitation at appellant's home was stopped due to I.K.'s asthma and the conditions of appellant's home.

{¶ 19} Evidence was also presented that appellant failed to satisfy the stable income component of the case plan because (1) he failed to provide proof of income, and (2) has five other children for whom he provides no monetary support and owes $15,000 in child support arrearage. Accordingly, appellant had not prior to trial remedied the conditions pertaining to him that led to the removal of I.K.

{¶ 20} Moreover, even had appellant substantially accomplished all of the objectives in his case plan, this court has held, "[A] parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification. The ultimate question under R.C. 2151.414[E](1) is whether the parent has substantially remedied the conditions that caused the child's removal. A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed [—] the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case-plan requirements

does not preclude a grant of permanent custody to a social services agency." (Internal citations omitted.)   *In re C.C.* at ¶25.

{¶ 21} Competent and credible evidence was presented that the components of the case plan requiring stable housing and income were not met, which supports the trial court's reliance on factors (1) and (4) of R.C. 2151.414(E).   We find that the trial court did not rely on any objectives not contained in the case plan in making its decision; all of the court's considerations were either directly stated in the case plan or logically flowed from those stated objectives.   Having a smoker living with I.K. who suffers from asthma is not stable housing as contemplated by the case plan, and the failure by appellant to remove this medical threat to I.K. from his home shows an unwillingness to provide an adequate permanent home for I.K.

{¶ 22} Appellant next maintains that the trial court's reliance on the factor of abandonment under R.C. 2151.414(E)(10) was in error.   We note, however, that the trial court's finding of abandonment would have pertained solely to I.K.'s mother, and therefore is not relevant to appellant's appeal.

{¶ 23} Finally, appellant contends that the trial court's reliance on factor (11) of R.C. 2151.414(E) was not supported by clear and convincing evidence, but rather hearsay testimony.   Under R.C. 2151.414(E)(11), a child cannot be placed with a parent if "the parent has had parental rights involuntarily

terminated with respect to a sibling of the child * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

{¶ 24} In this case, the trial court did not state any factual basis in its journal entry regarding this factor; however Howe testified that both mother and appellant told her that they had another child who was in the permanent custody of West Virginia. Appellant does not deny that he made this statement, but rather argues that he never established paternity regarding this child.

{¶ 25} But, even if the testimony was improper hearsay or paternity was never established, we find that two other factors existed that supported the trial court's decision that I.K. could not be placed with either parent within a reasonable period of time or should not be placed with the parents. See *In re C.C.* Accordingly, we find that the trial court properly determined that the first prong of R.C. 2151.414(B)(1) was satisfied. Appellant's first assignment of error is overruled.

{¶ 26} Having determined that I.K. could not be placed with either parent, the trial court was then required under the second prong of R.C. 2151.414(B)(1) to make a finding that permanent custody was in I.K.'s best

interest under the factors set forth in R.C. 2151.414(D)(1)-(5). Appellant argues in his second assignment of error that the trial court erred in finding permanent custody was in the best interest of the child.

{¶ 27} R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 28} "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶56. This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore* (Aug. 31, 2000), Cuyahoga App. No. 76942, citing, *In re Shaeffer Children* (1993), 85 Ohio App.3d 683, 621 N.E.2d 426.

{¶ 29} In this case, the juvenile court conducted an evidentiary hearing and considered the testimony and evidence presented. In determining whether a grant of permanent custody to CCDCFS was in I.K.'s best interest, the court considered all relevant factors, including those listed in R.C. 2151.414(D)(1)-(5). A review of the record clearly and convincingly supports the trial court's findings.

{¶ 30} With respect to the factors in R.C. 2151.414(D)(1) and (3), regarding interactions, interrelationships, and custodial history, the trial court found that "the child was removed from the hospital on December 4, 2009 and has been in the custody of CCDCFS continuously since that time. The child has only been in one placement since December 4, 2009," which is with his current foster family.

{¶ 31} The record supports these findings. Howe testified that I.K. was placed in emergency custody of CCDCFS on December 4, 2009, about two weeks after he was born, because mother tested positive for cocaine and I.K., who was born prematurely, was being treated for opiate withdrawal. I.K. was also jaundiced and had a low birth weight, which can be symptoms of exposure to drug use. I.K. was removed from his parents' care because of mother's history of drug use and untreated mental health issues, and because his

parents had unsafe and unstable housing and an unstable income, and had previously lost custody of a minor child or children.

{¶ 32} I.K. was placed with his current foster care giver immediately after removal from his parents. According to Howe, I.K.'s foster family consists of a mother and foster siblings. I.K.'s foster mother also runs a daycare. Howe testified that I.K. has assimilated to this family, as it has been the only home that he has known.

{¶ 33} I.K.'s guardian ad litem ("GAL") authored an amended report and recommendation, which was filed with the trial court for consideration. According to the GAL, I.K.'s foster family is meeting all of I.K.'s basic needs, and I.K. is "a happy and healthy thirteen month old male," who is "on target developmentally." The GAL recommended that permanent custody be granted because "I.K. is in need of a secure and stable permanent home."

{¶ 34} At the close of trial and after hearing all the testimony, the GAL affirmed her recommendation of permanent custody. The GAL recognized that appellant had a lot of positives, i.e. great affection for I.K., regular visits, no drug use, and a desire to be I.K.'s legal custodian, but also some negatives, i.e., five other children, a considerable child support arrearage, a questionable tenant, and unsubstantiated income. The GAL's report noted that although appellant has adequate housing, repairs still need made, and his house

currently does not have any provisions for a 13 to 14-month-old. The GAL was also concerned about I.K.'s asthma and appellant's ability to respond to an asthma attack. Ultimately, however, I.K.'s GAL opined that permanent custody was in the child's best interest, citing a need for stability.

{¶ 35} Regarding the factor in R.C. 2151.414(D)(2), the trial court made no specific finding as to the child's wishes except to note that I.K.'s GAL and mother both "support the prayer for permanent custody."

{¶ 36} As for the factor in R.C. 2151.414(D)(4), the child's need for permanent placement and the ability to achieve permanency without a grant of permanent custody to the agency, the trial court found that permanent custody to CCDCFS was in I.K.'s best interests. The trial court found "that CCDCFS had made reasonable efforts to prevent placement and/or to make it possible for the child to remain in or return to the home."

{¶ 37} The record supports such finding. As we previously stated and explained, appellant has not complied with the components of his case plan, even though CCDCFS has attempted reunification with him.

{¶ 38} Howe testified that she felt permanent custody was in I.K.'s best interests because of the issues I.K. has with asthma, appellant does not fully comprehend the seriousness of those issues, "[a]nd I just don't think the kind

of bond [appellant] has with his child is one that would provide for the best parenting and the best care for [I.K.].

{¶ 39} I.K.'s foster mother testified that I.K. has assimilated in her family and she expressed a desire to adopt I.K., but stated that she would be willing to maintain contact with both mother and appellant regarding I.K. in the future. I.K.'s foster mother testified that she has cared for him since birth.

{¶ 40} Upon our review of the record, we find that the trial court weighed all relevant factors and decided the best option for I.K. The trial court's goal in these cases is to provide stability and permanency for the minor child involved, and the uncertainties and instabilities in appellant's life are not in I.K.'s best interests. This court finds competent and credible evidence in the record supporting the trial court's decision. Accordingly, the trial court did not err in granting permanent custody of I.K. to CCDCFS. Appellant's second assignment of error is overruled.

{¶ 41} In appellant's final assignment of error, he contends that the trial court violated his due process rights by (1) admitting and relying on hearsay testimony; (2) failing to timely conduct a dispositional hearing; and (3) failing to notify him of mother's drug court proceedings. We find no merit to these arguments.

{¶ 42} Appellant claims the trial court relied on hearsay testimony in finding that he was in arrears for child support. While it is true that the trial court sustained appellant's objections regarding arrears when Howe testified, appellant admitted in his testimony that he is in arrears with prior child support orders. Therefore, any reliance on Howe's testimony was harmless.

{¶ 43} Appellant also claims the trial court relied on hearsay statements regarding the allegation that another child of appellant's was in the permanent custody of West Virginia. Notwithstanding appellant's failure to object to this testimony at trial, thus waiving all but plain error, appellant admitted to this fact at the adjudication hearing as stated in his appellate brief. Plain error exists when, but for the error, the outcome at trial would have been different. *In re J.T.*, Cuyahoga App. No. 93241, 2009-Ohio-6224, ¶67. As we previously stated in this opinion, even if the trial court considered hearsay testimony regarding this factor of R.C. 2515.414(E)(11), there were other factors supporting the trial court's decision. Accordingly, we find no plain error.

{¶ 44} Additionally, appellant claims the trial court relied on mother's out of court statement regarding her wishes for placement of I.K. Again, appellant failed to object to this testimony. Nevertheless, the trial court stated that because the mother was not present in court to verify that her

agreement to permanent custody was made knowingly, voluntarily, and intelligently, CCDCFS still had to establish its case through the testimony of its witnesses. The trial court made its finding in its journal entry regarding mother's wishes only after hearing competent and credible evidence that mother wished for permanent custody. Accordingly, we do not find plain error.

{¶ 45} Appellant also claims his due process rights were violated because the trial court failed to hold a timely dispositional hearing. R.C. 2151.28(B)(3) and 2151.35(B)(1) provide that a "dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed." "If the dispositional hearing is not held within the period of time required by this division, the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice." R.C. 2151.35(B)(1).

{¶ 46} This court has held that a party may implicitly or expressly waive the right to a dispositional hearing within the 90-day time period. "An implicit waiver occurs when a party fails to move for dismissal when it becomes the party's right to do so, or when the party assists in the delay of the hearing." *In re J.J.*, Cuyahoga App. No. 86267, 2007-Ohio-535, ¶23, citing *In re A.P.*, Butler App. No. CA2005-10-425, 2006-Ohio-2717, ¶13.

**{¶ 47}** A review of the record reveals that appellant implicitly waived his right to a dispositional hearing within the statutory 90-day time frame. CCDCFS filed its complaint for permanent custody on December 4, 2009. The trial court did not hold the dispositional hearing until January 27, 2011, clearly outside the 90-day statutory time frame. Nevertheless, appellant failed to object at anytime to the delay or file a motion to dismiss seven days prior to the hearing pursuant to Juv.R. 22(E) when it was his right to do so. Accordingly, we find appellant implicitly waived his right to a dispositional hearing within the applicable statutory time period.

**{¶ 48}** Appellant's final due process argument involves his right to receive notice of mother's drug court proceedings. Appellant failed to raise this issue in the trial court, thus waiving all but plain error on appeal. We find no plain error because appellant was not a party in the drug court proceedings. While the trial court may have reviewed the case and mother's case plan, the record does not demonstrate that appellant's case plan was also reviewed, thereby depriving him due process.

**{¶ 49}** Accordingly, appellant's final assignment of error is overruled.

**{¶ 50}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, P.J., and
MARY J. BOYLE, J. CONCUR