[Cite as *In re D.B.*, 2014-Ohio-3571.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| D.B., | Hon. W. Scott Gwin, J. |
| D.B. JR., | Hon. Craig R. Baldwin, J. |
| K.B., | |
| M.B. | Case Nos. 14-CA-0004, 14-CA-0005, |
| | 14-CA-0006, 14-CA-0007 |

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Perry County Court of Common Pleas, Juvenile Division, Case Nos. 2005 C 347, 2010 C 352, 2010 C 353, and 2012 C 356 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 15, 2014 |

APPEARANCES:

| | |
|---|---|
| For Appellee - | For Appellant - |
| Perry County Children Services | Mother, Nicole Bieber |
| EMILY STRANG TARBERT | STEVEN P. SCHNITTKE |
| 401 Market St., Suite 201 | 114 S. High St., P.O. Box 536 |
| Zanesville, Ohio 43701 | New Lexington, Ohio 43764 |

*Hoffman, P.J.*

{¶1} Appellant Nicole Bieber ("Mother") appeals the January 21, 2014 Judgment Entries entered by the Perry County Court of Common Pleas, Juvenile Division, which granted permanent custody of her four minor children to Appellee Perry County Children's Services ("PCCS").

STATEMENT OF THE FACTS AND CASE

{¶2} Mother and Daniel Bieber ("Father") are the biological parents of M.B. (dob 4/4/2005), K.B. (dob 10/3/2006), Da.B (dob 10/30/2009), and De.B. (dob 2/8/2011).[1] PCCS has had on-going involvement with the family since June, 2005, and has had protective supervision since that time. On August 15, 2012, PCCS filed complaints alleging M.B. and K.B. were abused, and Da.B and De.B. were dependent children. The trial court placed the children in the emergency shelter care custody of PCCS on the same day. Mother executed an Adjudicatory/Dispositional Time Waiver on October 31, 2012.

{¶3} On January 17, 2013, Mother filed an objection to the placement of M.B. and K.B. with Patricia and William Walker, as well motions for custody, and for visitation and expanded visitation. The trial court issued a stay, prohibiting the placement of M.B. and K.B. with the Walkers. Sandra Brandon was appointed guardian ad litem for the children. M.B. and K.B. were subseuqently placed with the Walkers.

{¶4} PCCS filed a motion for permanent custody on April 10, 2013. The trial court conducted a hearing on August 28, September 25, and October 23, 2013. The following evidence was presented.

---

[1] Father did not file an appeal.

**{¶5}** Dr. Gary Wolfgang performed a psychological evaluation of Mother at the request of PCCS. Dr. Wolfgang diagnosed Mother with narcissistic personality disorder. He explained a person with this disorder lacks empathy and is unable to imagine how another individual thinks or feels. He added a person with narcissistic personality disorder is profoundly selfish, focusing on her own experiences and seeing only her view of the world. Dr. Wolfgang indicated the prognosis is guarded, at best, regardless of treatment. The treatment of choice is long term intensive therapy. Mother's personality disorder is a barrier to her successfully parenting the children. Mother had no sympathy toward the children, and insisted M.B. and K.B.'s reports of abuse were not accurate.

**{¶6}** Cynthia McLean McCormick, an approved foster parent for PCCS, testified Da.B. and De.B. were placed in her home from October 3, 2012, to June 1, 2013. Both children arrived very underweight and had a number of eating issues. Da.B. would not eat in the very beginning. De.B. ate like a starving bird. She would shovel food into her mouth and often bit her fingers. The children could not run, and their gaits were unsteady. Although he was three years old, Da.B. did not talk. Both children made marked strides while in McCormick's care. The children acted out and had sleeping problems following visits with Mother.

**{¶7}** Patricia Walker testified M.B. and K.B. are currently in her care. Father is Walker's nephew. Father grew up in the same home as Walker. Mother and Father asked Walker and her husband to care for M.B. and K.B. on a regular basis from the time the girls were infants. The girls spent almost every weekend with Walker. Walker provided for all their needs, including clothing and food. M.B. and K.B. spent the entire

summer of 2012, with Walker. Mother did not call or visit the girls that summer. The girls declined Walker's offers to call Mother. During this stay, M.B. and K.B. disclosed sexual abuse perpetrated upon them by Father. Walker immediately contacted PCCS.

{¶8} Walker and her husband wish to adopt the girls should the trial court grant permanent custody to PCCS. Walker intends to maintain a relationship between M.B., K.B., Da.B., and De.B. M.B. is on an independent education plan. She has been diagnosed with ADD/ADHD, and is currently prescribed medication to address the issues associated therewith. M.B. has difficulty with reading and math. Walker is having K.B. assessed. With regard to visitation, the girls become very distracted in the days after seeing Mother. M.B. and K.B. are unhappy about leaving Da.B. and De.B. when the visitations ended.

{¶9} Walker described the condition of Mother's home prior to the children's removal. The home was infested with roaches and bed bugs. Trash was spread all over the floor. Walker addressed the uncleanliness with Mother and Father, but they blamed the children for the conditions. Walker noted the children were always dirty and hungry when she received them. M.B. and K.B. ate constantly while at Walker's home. Mother never took the children to the doctor or the dentist.

{¶10} Deborah Burden is the current foster mother of Da.B. and De.B. The children were placed in her home on June 1, 2013. Initially, the children had a difficult time sleeping and taking naps. Both Da.B. and De.B. suffered from night terrors. Da.B. would not start to eat until he was sure De.B. had had enough food. De.B. shoveled food into her mouth. The children have special needs which Burden is able to accommodate due to her education and training. Burden stated she and her husband

are in agreement with the Walkers to facilitate visitation between all four siblings. Burden indicated she and her husband would petition to adopt Da.B. and De.B. if the trial court granted permanent custody to PCCS.

{¶11} Lynnie Thompson, the on-going caseworker until August 14, 2013, testified PCCS's earlier involvements with the family were due to the conditions of the home. With respect to her case plan in the current matter, Mother completed the psychological evaluation, but did not initiate counseling. Thompson explained she did not complete monthly home visits because Mother would not allow her access to the home and stated she was not living at the residence. Mother did not provide Thompson with the address of where she was living.

{¶12} Thompson visited the children on a monthly basis. The children are doing well in their placements, and she observed huge improvements in their behaviors. M.B. was diagnosed with ADD/ADHD, and is seen at the behavioral clinic at Children's Hospital. M.B. has some cognitive delays. She engages in occupational therapy and receives supplemental educational assistance. K.B. has some social and emotional issues which are being addressed through counseling. K.B. does well academically. Da.B. and De.B. both have fine motor and gross motor delays as well as speech delays. Da.B. has a history of failure to thrive. He receives counseling to address his acting out. De.B. also receives counseling. Thompson had addressed the children's needs with Mother, however, Mother was opposed to the children receiving service.

{¶13} Thompson opined it was in the best interest of the children to grant permanent custody to PCCS. Thompson had no problems or concerns with the children's current placements.

**{¶14}** Michelle Matchet, a forensic interviewer specialist and multi-disciplinary team facilitator employed by the Fairfield County Child Advocacy Center between January, 2010, and August, 2013, testified she interviewed M.B. and K.B.  The girls were seven and five, respectively, at the time.  M.B. referred to Father and Mother by their first names, and not "dad" or "mom".   Matchet stated, during her interview with M.B., the girl disclosed Father had rubbed his "dingy" on her "private part."   Using anatomical dolls, M.B. identified Father's "dingy" as the penis and her "private part" as the vagina.  Matchet noted M.B. provided extensive knowledge of sexual acts that a child of her age would not typically have.  When Matchet interviewed K.B., she also disclosed sexual abuse perpertrated upon her by Father.

**{¶15}** The trial court conducted an in-camera interview of M.B and K.B., and found both girls competent to testify. M.B. stated Father had pulled down her underwear, then pulled down his own underwear and instructed her to touch his penis. M.B. also stated Father touched her private area with his tongue.  M.B. recalled when she told Mother about the incidents, Mother instructed M.B. to tell Father to stop, but M.B. noted Father did not stop when she told him to stop.  K.B. recalled Mother stuck her finger into K.B.'s private part while she (Mother) was putting medicine there.

**{¶16}** Dawn Layton, a case aide with Perry County Children's Services, testified she observed visitation between Mother and the children.  Mother would not obey Agency policies during her visitation with the children.  Mother would not come into the building to wait for the children to arrive, but would wait for them in the parking lot. Additionally, Mother would not turn off her cell phone.  She would videotape the children and instruct them to shake their bottoms as well as to make belching or flatulence

sounds.   Mother typically sat and watched the children play without much interaction. She would focus all of her attention on one child and ignore the others.   De.B., who is generally very outgoing, fought when Mother tried to pick her up.   M.B. and K.B. typically interact with one another during visitation with Mother. The two girls parent the younger siblings.   Mother just watches.   Mother would arrive at visits unbathed and wearing dirty clothing.

{¶17} Via Judgment Entries filed January 21, 2014, the trial court granted permanent custody of all four children to PCCS.

{¶18} It is from these judgment entries Mother appeals, assigning as error:

{¶19} "I. THE COURT COMMITTED ERROR WHEN IT AWARDED PERMANENT CUSTODY OF THE CHILDREN TO APPELLANT PURSUANT TO R.C. 2151.414(B)(1)(a).

{¶20} "II. THE ORDER OF THE COURT GRANTING PERMANENT CUSTODY OF THE CHILDREN SHOULD BE DISMISSED PURSUANT TO R.C. 2151.414(A)(2)."

{¶21} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

{¶22} In her first assignment of error, Mother contends the trial court erred in awarding permanent custody of her children to PCCS.

{¶23} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments

supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶24}** Mother challenges the trial court's failure to make dispositional rulings on the two complaints of abuse with respect to M.B. and K.B., and the two complaints of dependency pertaining to Da.B. and De.B. prior to the permanent custody hearing.

**{¶25}** Ohio courts have routinely held that a party may implicitly or expressly waive the right to an adjudication hearing within the time period stated in R.C. 2151.28(A)(2) and a dispositional hearing within the time period stated in R.C. 2151.35(B)(1).

**{¶26}** In the instant action, Mother executed an adjudicatory/dispositional time waiver due to the on-going sexual abuse investigation, and to alleviate the need from M.B. and K.B. to testify at two separate hearings.  Mother cannot now complain as it is akin to invited error.

**{¶27}** Mother also takes issue with the trial court's finding the children had been in the custody of PCCS for twelve or more of a consecutive twenty-two month period.

**{¶28}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶29}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court

determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶30} Contrary to Mother's assertion, the trial court did not find the children had been in the temporary custody of PCCS for twelve or more months of a consecutive twenty-two month period. Rather, the trial court found the children cannot be placed with either of the child's parents within a reasonable time.

{¶31} Further, Mother submits the trial court did not make specific findings as to why the grant of permanent custody to PCCS was in the children's best interest.

{¶32} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of

placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶33}** Mother did not request findings of fact relative to the trial court's best interest finding. A trial court is not required to expressly set forth factual findings relating to each statutory factor in a judgment entry. *In re Malone* (May 11, 1994), Scioto App. No. 93CA2165; *In re Dyal*, Hocking App. No. 01CA12, 2001-Ohio-2542; *In re T.M.*, Cuyahoga App. No. 83933, 2004-Ohio-5222. The trial court must, however, provide specific factual findings that correlate to the statutory factors, if a party makes a request. See, *In re Dyal*, supra.

**{¶34}** We find there was competent, credible evidence as set forth in our statement of the facts and case, supra, to support the trial court's finding the grant of permanent custody to PCCS was in the children's best interest.

**{¶35}** Mother's first assignment of error is overruled.

II

**{¶36}** In her second assignment of error, Mother maintains the trial court's order granting permanent custody should be dismissed pursuant to R.C. 2151.414 as the trial court lost jurisdiction to render such decision due to the passage of time.

**{¶37}** R.C. 2151.414(A)(2) sets forth the following time guidelines:

(2) * * * The court shall issue an order that grants, denies, or otherwise disposes of the motion for permanent custody, and journalize the order, not later than two hundred days after the agency files the motion.... The failure of the court to comply with the time periods set forth

in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court.

{¶38} Mother asserts 283 days lapsed between PCCS's filing of the motion for permanent custody, and the trail court's journalizing its decision to grant permanent custody to PCCS. She concludes the trial court lost its jurisdiction to render the decision. We disagree.

{¶39} Recently, in *In re: K.H.*, Licking App. No. 13–CA–100, 2014 -Ohio- 1594, this Court found: "Because the time provisions of R.C. 2151.414(A)(2) are directory and not mandatory, the Ohio Supreme Court has held that a litigant must seek a writ of procedendo against the juvenile court if it does not comply with these time limits. *In re Davis,* 84 Ohio St.3d 520, 523–524, 1999–Ohio–0419. If a party does not seek such a writ, he is stopped from arguing on appeal that delay by the juvenile court violated his due process rights. *Id.* at 524, 705 N.E.2d 1219."

{¶40} Mother's second assignment of error is overruled.

{¶41} The judgment of the Perry County Court of Common Pleas, Juvenile Court, is affirmed.

By: Hoffman, P.J.

Gwin, J.  and

Baldwin, J. concur