[Cite as *In re J.A.*, 2017-Ohio-997.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

IN RE:

      J.A.

DEPENDENT CHILD.

[DONNA MARSH - APPELLANT]

CASE NO. 4-16-18

**O P I N I O N**

---

IN RE:

      R.A.

DEPENDENT CHILD.

[DONNA MARSH - APPELLANT]

CASE NO. 4-16-19

**O P I N I O N**

---

IN RE:

      A.M.

DEPENDENT CHILD.

[DONNA MARSH - APPELLANT]

CASE NO. 4-16-20

**O P I N I O N**

---

**Appeals from Defiance County Common Pleas Court
Juvenile Division
Trial Court Nos. 30312-2, 30313-2 and 32048**

**Judgments Affirmed**

**Date of Decision:  March 20, 2017**

Case Nos. 4-16-18, 19, 20

**APPEARANCES:**

> *Timothy C. Holtsberry* **for Appellant**

> *Joy S. O'Donnell* **for Appellee**

**SHAW, J.**

**{¶1}** Mother-appellant, Donna Marsh ("Marsh"), brings this appeal from the September 26, 2016, judgment of the Defiance County Common Pleas Court, Juvenile Division, terminating Marsh's parental rights related to her three children and awarding permanent custody of the children to Defiance County Job and Family Services ("the Agency"). On appeal, Marsh argues that the trial court erred by finding that the Agency engaged in reasonable efforts to support reunification, that the trial court erred in finding that the children could not be returned to Marsh within a reasonable time, and that the trial court did not abide by the timelines established in R.C. 2151.28 in adjudicating the matter and in making its disposition.

Events Prior to the Current Case Filing

**{¶2}** Marsh had three children: J.A., born in January of 2003, R.A., born in August of 2006, and A.M., born in July of 2014. Two of the children, J.A. and R.A., shared the same father, Johnny A. The putative father of A.M. was Roy H., but it was never determined that Roy H. was the actual father of A.M.

{¶3} As a result of a previous case with the Agency, J.A. and R.A. were in the temporary custody of the Agency from 2010 until 2013.[1] According to the record, the prior case began when a drug search was conducted of Marsh's home and cocaine, or a crack pipe, was discovered in the children's cereal box.[2] (J.A. Doc. No. 92).[3] Needles and other drug paraphernalia were also discovered in Marsh's residence.

{¶4} Marsh was convicted of Possession of Cocaine and Aggravated Possession of Drugs in 2011. She was placed on community control with a 22-month prison sentence reserved. Shortly thereafter, Marsh violated her community control and was incarcerated. In January of 2012 Marsh was granted judicial release and placed back on community control. The following year, in 2013, the Agency's prior case related to J.A. and R.A. was closed with the reunification of the children with Marsh.

### The Case *Sub Judice*

{¶5} On January 8, 2015, the current action began when a complaint was filed by the Agency alleging that Marsh's three children were neglected and dependent children. It was alleged that Marsh, who was on community control for

---

[1] A.M. had not been born yet and thus was not part of the prior case.

[2] Marsh testified at the final hearing that it was actually a crack pipe that was found in a Rice Krispies box and she testified that it was not a box that the children used. The GAL's report indicates that cocaine, rather than a crack pipe, was found in the "children's cereal box." (J.A. Doc. No. 92).

[3] Essentially the same documents were filed in each case file corresponding to J.A., R.A., and A.M. The document numbers in J.A.'s case file will be used as representative examples.

her felony drug convictions, tested positive for drugs, including cocaine. It was also alleged that Marsh was unable to keep and provide a stable home. Marsh initially asserted that the allegations were not true.

**{¶6}** Both Johnny A. and Roy H. were put on notice of the proceedings in this case, and counsel was appointed for Johnny A. to represent his interests; however, neither Johnny A. nor Roy H. participated in any of the court proceedings except through appointed counsel. Neither father saw their children at all during the pendency of this case, though Johnny A. had some contact with J.A. via phone for a time. That contact between J.A. and his father abruptly ceased.[4]

**{¶7}** At an initial hearing on the complaint on January 29, 2015, the children were placed in the temporary care of Anna Castillo, who was residing with the mother of Roy H. at the time, with the Agency retaining protective supervision.[5] When that placement became untenable, the Agency acquired temporary custody of the children on February 12, 2015.

**{¶8}** A case plan was filed in the record indicating, *inter alia*, that Donna should complete an inpatient drug treatment program at Serenity Haven, that she should maintain employment, and that she should keep a stable home.

---

[4] Testimony indicated that both Johnny A. and Roy H. had active warrants. Roy H. never even appeared when a paternity test was scheduled to determine if he was actually A.M.'s father. Neither father appealed permanent custody being awarded to the Agency.
[5] It is unclear in the record what familial relationship Anna Castillo had to the children.

{¶9} On April 30, 2015, a hearing was held wherein Marsh withdrew her pleas of "not true" to the dependency and neglect allegations and she entered a plea of "true" to the allegations of dependency related to all three children. In exchange, the Agency dismissed the neglect allegation. Adjudication was not finalized and the matter was continued in order to provide more time to get into contact with the fathers.

{¶10} Before the adjudication hearing resumed, Marsh's community control was revoked for her failure to complete drug treatment at Serenity Haven as ordered and she was incarcerated.

{¶11} On June 30, 2015, the remainder of the adjudication hearing was held. Marsh did not appear due to being incarcerated. Based on Marsh's prior admission and the evidence presented at the hearing, the trial court found by clear and convincing evidence that the children were Dependent Children as defined in R.C. 2151.04(C).[6]

{¶12} On August 4, 2015, a dispositional hearing was held. At the hearing, the Agency requested that the children remain in the Agency's temporary custody for one year, particularly given Marsh's incarceration. Marsh was not present for the hearing due to her incarceration but her attorney did indicate that Marsh

---

[6] The only transcript that was provided on appeal was the transcript of the final permanent custody hearing. Thus we rely on the trial court's entries as to what occurred at the earlier hearings.

consented to the children remaining in the temporary custody of the Agency for a year. The court ordered the agreed disposition.

{¶13} On December 7, 2015, the Agency moved to extend temporary custody for six months due to Marsh's ongoing incarceration. A hearing was held on the matter and the parties agreed to extend temporary custody by six months.

{¶14} On April 25, 2016, the Agency filed a motion to modify temporary custody into permanent custody. The Agency argued that the children had been in its temporary custody for twelve of the last twenty-two months and that the children could not and should not be placed with their parents within a reasonable time. Further, the Agency argued that Marsh had not completed any of her case plan objectives and that her incarceration prevented her from making meaningful progress on the objectives within a reasonable time.

{¶15} On June 29, 2016, Marsh filed a motion seeking visitation with her children. She indicated that she had been released from prison and placed in a halfway house. According to the record, visitation was facilitated with Marsh.

{¶16} On July 21, 2016, Marsh filed a motion to extend the temporary custody of the Agency for six months rather than granting the Agency's motion for permanent custody. The Agency contested this motion.

{¶17} On August 4, 2016, a hearing was held on Marsh's pending motions. At the hearing, the parties agreed that the Agency's motion for permanent custody

and Marsh's motion for a six-month extension of temporary custody would be joined and heard on August 30, 2016.

{¶18} On August 22, 2016, the GAL filed her report and recommendation in the matter. In her repot, the GAL gave a detailed accounting of her involvement in this case. The GAL also gave a detailed accounting of Marsh's history with the Agency and her criminal history. In addition to the criminal history already referenced, the GAL noted that the children had witnessed domestic violence and that Marsh had admitted to taking her anger out on the children.

{¶19} The GAL's report also indicated that Marsh would have to rely on third parties in order to be able to adequately care for the children. Ultimately, the GAL's report stated that the children were in need of permanent placement and that she believed granting permanent custody to the Agency was in the children's best interests, particularly given how well the children were doing in their placements.

{¶20} On August 30-31, 2016, a hearing was held on the Agency's permanent custody motion and Marsh's motion to extend the Agency's temporary custody.[7] At the hearing, the Agency presented the testimony of six witnesses. Testimony indicated that all three children were adjusting well in their placements. Each child had a current caregiver provide testimony at the hearing. Testimony

---

[7] A portion of the first witness's testimony was not able to be transcribed due to a recording malfunction. The trial court had a "Statement of Evidence" prepared for the missing testimony, and it was included in the record.

detailed J.A.'s strong desire to stay in his current placement, where he was flourishing socially, academically, and athletically. Similarly, A.M. had adapted to her foster home and was incorporated as part of the family, which was largely the only family A.M. had known being that she had been in foster care for the vast majority of her life. Testimony indicated that R.A. was adjusting to his therapeutic group home, but he did have some issues that required high levels of supervision by adults at all times. Testimony also indicated that R.A.'s behavior had declined since visitations with Marsh had resumed after her release from prison.

{¶21} The State also presented testimony regarding Marsh's drug history and the history of all three children and their association with the Agency, which for all three children was a substantial portion of their lives. In addition, an Agency caseworker testified that Marsh had functionally made no progress on her case plan, that Marsh was living with a boyfriend with a significant criminal history that would disqualify the house for placement, that the children had moved on, and that R.A. had issues that would require substantial oversight.

{¶22} In Marsh's case-in-chief, she testified that she had been recently released from incarceration, that she had a job working at Burger King and that she had a house big enough to accommodate the children. However, Marsh indicated she was living with a man she had met on Facebook and that he had not yet met the children. Marsh's boyfriend had a criminal history including convictions for, *inter*

*alia*, Burglary and Grand Theft Auto. Marsh indicated that she had tried to make some progress on her case plan but it was difficult due to her incarceration. However, she testified that she was drug free and she was holding her current job at Burger King.

**{¶23}** Marsh did testify that she would respect J.A.'s wishes to remain with his foster family and that she would not contest the Agency's permanent custody motion related to him. She testified, however, that she did want custody of her two younger children.

**{¶24}** Marsh also presented the testimony of a woman named Audrey Mattox. Mattox testified that she would help Marsh as much as she could with the children. Mattox lived in a seven-bedroom home with a number of people, most of which were collecting disability. Mattox did not have employment and indicated she would babysit for the children at Marsh's residence.

**{¶25}** The trial court took the matter under advisement and issued a final judgment entry on the matter on September 26, 2016. In its entry, the trial court made a number of findings and concluded that the children had been in the custody of the Agency for twelve of the previous twenty-two months, that the Agency had made "rather extensive efforts" toward reunification but Marsh had failed to meet her case planning objectives, that the children could not and should not be placed with their parents within a reasonable time, and that it was in the best interests of

the children that permanent custody be granted to the Agency. The trial court then terminated Marsh's parental rights related to the three children.

{¶26} It is from the judgments related to all three children that Marsh appeals, asserting the following assignments of error for our review.[8]

**Assignment of Error No. 1**
**The trial court erred and violated the mother's rights under the Fourteenth Amendment to the United States Constitution Due Process Clause and Article I Section Sixteen of the Ohio Constitution in finding that permanent custody was supported by clear and convincing evidence when she was given less than a half a month to complete a newly formed case plan.**

**Assignment of Error No. 2**
**The trial court erred and violated the mother's rights under the Fourteenth Amendment to the United States Constitution Due Process Clause and Article I Section Sixteen of the Ohio Constitution in finding that permanent custody was supported by clear and convincing evidence when there was no evidence that the children could not be returned to the mother within a reasonable time.**

**Assignment of Error No. 3**
**The trial court erred and violated the mother's rights under the Fourteenth Amendment to the United States Constitution Due Process Clause and Article I Section Sixteen of the Ohio Constitution in not following any of the statutory timeframes found in Revised Code Chapter 2151.**

{¶27} For ease of discussion we elect to address the assignments of error out of the order in which they were raised.

---

[8] Despite the fact that Marsh agreed that the Agency should be granted permanent custody of J.A., and despite the fact that the trial court mentioned Marsh's agreement on this issue in its judgment entry, Marsh still appeals the grant of permanent custody of J.A. to the Agency.

*Third Assignment of Error*

**{¶28}** In Marsh's third assignment of error, she argues that the statutory "timelines" contained within R.C. 2151.28 and R.C. 2151.414 were not followed in this case, violating her due process rights. Specifically, Marsh contends that R.C. 2151.28 contains timelines for setting an adjudicatory hearing, holding an adjudicatory hearing, and holding a dispositional hearing, and that the trial court did not follow them. Marsh also argues that R.C. 2151.414 provides a timeline for determining an Agency's motion for permanent custody, and that the trial court again did not abide by that timeline.

Marsh's Arguments

**{¶29}** The first timelines that Marsh argues that the trial court did not follow are contained in R.C. 2151.28(A), and (A)(2), which read

> **(A) No later than seventy-two hours after the complaint is filed, the court shall fix a time for an adjudicatory hearing. The court shall conduct the adjudicatory hearing within one of the following periods of time:**
>
> **\* \* \***
>
> **(2) If the complaint alleged that the child is an abused, neglected, or dependent child, the adjudicatory hearing shall be held no later than thirty days after the complaint is filed, except that, for good cause shown, the court may continue the adjudicatory hearing for either of the following periods of time:**
>
> **(a) For ten days beyond the thirty-day deadline to allow any party to obtain counsel;**

**(b) For a reasonable period of time beyond the thirty-day deadline to obtain service on all parties or any necessary evaluation, except that the adjudicatory hearing shall not be held later than sixty days after the date on which the complaint was filed.**

{¶30} Marsh contends that the trial court did not set an adjudicatory hearing within seventy-two hours of the filing of the complaint and that the adjudicatory hearing, when it was held, was held well outside the timeline of R.C. 2151.28(A)(2).

{¶31} Marsh also argues that the dispositional hearing was not held within the statutory timeline under R.C. 2151.28(B)(3), which states, in pertinent part, that, "in no case shall the dispositional hearing be held later than ninety days after the date on which the complaint was filed."

{¶32} Finally, Marsh argues that the trial court did not determine the agency's permanent custody motion within the statutory timeline according to R.C. 2151.414(A)(2), which reads,

**(2) The court shall hold the hearing scheduled pursuant to division (A)(1) of this section not later than one hundred twenty days after the agency files the motion for permanent custody, except that, for good cause shown, the court may continue the hearing for a reasonable period of time beyond the one-hundred-twenty-day deadline. The court shall issue an order that grants, denies, or otherwise disposes of the motion for permanent custody, and journalize the order, not later than two hundred days after the agency files the motion.**

**\* \* \***

**The failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the**

> **court to issue any order under this chapter and does not provide
> any basis for attacking the jurisdiction of the court or the validity
> of any order of the court.**

Analysis

{¶33} At the outset, Marsh never raised any issues with the trial court that her case was not being adjudicated or disposed of within the statutory timelines. She also never moved for dismissal of her case based on any of the timelines. In similar circumstances a number of Ohio Appellate Courts have all held that failure to raise the issue or attempt to assert the right at the trial court level waives that issue for appeal. *See In the Matter of A.P.*, 12th Dist. Butler No. CA2005-10-425, 2006-Ohio-2717, ¶¶ 12-13 (finding that a party implicitly waives the adjudicatory and dispositional timelines contained in R.C. 2151.28 when the party fails to move for dismissal after it becomes the party's right to do so or when the party assists in the delay of the hearing); *In re Jessica M.B.*, 6th Dist. Ottawa No. OT-03-022, 2004-Ohio-1040, ¶ 6 (finding that the dispositional time requirements in R.C. 2151.28(B)(3) can be waived when not asserted by either party); *In re M.C.*, 4th Dist. Scioto No. 16CA3755, 2016-Ohio-8294, ¶¶ 14-15 (finding that the trial court may go beyond 120 days in a permanent custody action for good cause, that even assuming there was no good cause R.C. 2151.414(A)(2) explicitly states that failure to comply with the time periods does not affect the authority of the court or provide a basis for attacking jurisdiction, and that an appellant has legal recourse through

filing a *writ of procedendo*, preventing any due process claims); *see also In re D.W. and K.N.*, 4th Dist. Athens No. 06CA42, 2007-Ohio-2552, ¶¶ 14-15; *In re I.K.*, 8th Dist. Cuyahoga No. 96469, 2011-Ohio-4512, ¶¶ 45-46; *In re. D.B.*, *D.B. JR., K.B., M.B.*, 5th Dist. Perry Nos. 14-CA-0004, 14-CA-0005, 14-CA-0006, 14-CA-0007, 2014-Ohio-3571, ¶ 25.

{¶34} Nevertheless, even assuming the timeline issues were not waived, Marsh *actively* contributed to delaying her case at nearly every possible opportunity. The complaint was filed on January 8, 2015, and that very same day the matter was set for a hearing on January 29, 2015. At the initial hearing on the complaint, Marsh requested that an attorney be appointed to represent her. That request was granted and Marsh's initial appearance was continued so that, *inter alia*, Marsh could consult with her attorney, delaying her case. Then, at Marsh's "official" initial appearance with her attorney, where she entered "not true" pleas to the allegations, Marsh's attorney requested that the matter be set for a pretrial hearing rather than an adjudicatory hearing.

{¶35} At the subsequent pretrial hearing, the "*parties* determined to continue this matter for further Pretrial Hearing * * *[.]" (Emphasis added) (J.A. Doc. No. 25). At the next pretrial hearing, Marsh withdrew her "not true" pleas and entered "true" pleas to the dependency allegations. Final adjudication was continued at that time in order to give the fathers more time to respond and Marsh's attorney indicated

-14-

that Marsh did not object to the children remaining in the Agency's temporary custody. (J.A. Doc. No. 27).

**{¶36}** On May 26, 2015, another hearing was held and the matter was continued further so Johnny A.'s attorney could have more time to get into contact with him. At this time Marsh was incarcerated and her attorney specifically noted that there was *no objection* to a continuance. (J.A. Doc. No. 32).

**{¶37}** On June 30, 2015, adjudication was held. After the adjudication, it was specifically noted that "*[a]ll of the parties* agreed to continue the disposition in this matter until August 4, 2015, due to their availability." (Emphasis added) (J.A. Doc. No. 38). Disposition was held on August 4, 2015.

**{¶38}** After the Agency filed its motion to modify temporary custody into permanent custody on April 25, 2016, Marsh filed motions in the interim, including a motion for visitation and a motion to extend the agency's temporary custody for six months, potentially delaying the final permanent custody hearing. Nevertheless, the permanent custody hearing began on August 30, 2016, narrowly outside of the statutory window.

**{¶39}** Based on the record it is abundantly clear that even if Marsh had not waived her right to assert the statutory timelines she cites on appeal, she actively contributed and consented to the delaying of her case. Under these circumstances

we can find no error.[9]  For all of these reasons, Marsh's third assignment of error is overruled.

*First Assignment of Error*

**{¶40}** In Marsh's first assignment of error, she argues that the Agency did not conduct reasonable case plan efforts to support reunification.  Marsh argues that she had made some progress since being released from prison and that she had remedied many issues.  Marsh also argues that a new case plan was filed just before the final hearing, which was unreasonable as it essentially added more requirements for her to fulfill with no time to complete them.

**{¶41}** The right to parent one's children is a fundamental right.  *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054 (2000); *In re Hayes*, 79 Ohio St.3d 46, 48 (1997).  However, government has broad authority to intervene to protect children from abuse, dependency, and neglect.  *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28, citing R.C. 2151.01.  "When the state intervenes to protect a child's health or safety, '[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed are called "reasonable efforts." ' " *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104,

---

[9] This is especially true with regard to adjudication and the permanent custody timelines.  Revised Code 2151.28(K) states that, "The failure of the court to hold an adjudicatory hearing within any time period set forth in division (A)(2) of this section does not affect the ability of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court *or the validity of any order of the court*." (Emphasis added.)  Similar language was already cited related to permanent custody timelines, which is contained in R.C. 2151.414(A)(2).

¶ 28, quoting Will L. Crossley, Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation, 12 B.U.Pub.Int.L.J. 259, 260 (2003).

**{¶42}** An agency's duty to make reasonable efforts to preserve or reunify a family unit is referred to in various sections of the Ohio Revised Code. *In re C.F.*, 113 Ohio St.3d 73, 2007–Ohio–1104, ¶ 29. Revised Code 2151.419 provides that, but for a few narrowly defined statutory exceptions, the juvenile court must find a children services agency made "reasonable efforts" to reunify a family at hearings involving the adjudication, emergency custody, detention, and disposition for abused, neglected, or dependent children. *C.F.* at ¶ 41. The Agency has the burden of proving that it made those reasonable efforts. R.C. 2151.419(A)(1).

**{¶43}** Generally, a juvenile court does not have to make a reasonable efforts determination pursuant to R.C. 2151.419(A)(1) in a permanent custody hearing. *C.F.* at ¶ 41. However, if the Agency has not established that reasonable efforts have been made prior to the permanent custody hearing, then it must demonstrate such efforts at that time. *Id.* at ¶ 43; *In re J.H.*, 12th Dist. Clinton Nos. CA2015-07-014, CA2015-07-015, 2016-Ohio-640, ¶ 29.

**{¶44}** In this case, the trial court made its "reasonable efforts findings" related to the Agency's efforts in essentially each journal entry after each phase of this case. Thus the trial court was not required to find that the Agency had engaged

in reasonable efforts to support reunification again at the permanent custody hearing. Nevertheless, the trial court *did* make the finding in its final judgment entry on the matter, indicating as follows. "The Court finds that despite the rather extensive efforts of the [Agency] * * * with Donna Marsh, she has nevertheless consistently failed to meet the objectives of the case planning efforts." (J.A. Doc. No. 103). Notably, the trial court made this finding only after pointing out that while Marsh had made some initial progress on her case plan, she did not complete any of her goals.

{¶45} The trial court's determination was supported by the record in that the Agency had a case plan in place for Marsh that was amended and reviewed during the pendency of this case but Marsh was incarcerated for a substantial portion of this action and had no contact with her children during that time, making progress difficult. In addition, there was no verification provided to the Agency that Marsh completed any of her services under the case plan while in prison.

{¶46} When she was released from prison, Marsh did obtain a new home and employment; however, she lived with a boyfriend with a criminal history that would have disqualified his home as a placement option for the children according to one of the caseworkers and the GAL indicated that Marsh would have to rely on a third party to help her care for the children. This was particularly true given that R.A. had some special needs.

{¶47} While Marsh argues that there was not enough time to complete the goals under her newest case plan, Marsh had not completed any of the goals on her case plan, other than arguably remaining drug free, which was practically required due to her incarceration. Based on the record before us we cannot find that the trial court erred, therefore Marsh's first assignment of error is overruled.

*Second Assignment of Error*

{¶48} In Marsh's second assignment of error, she argues that there was "no evidence" that the children could not be returned to her within a reasonable time. Specifically, she contends that based on her progress in her case plan since being released from prison the evidence did not clearly and convincingly establish that the children could not be placed with her within a reasonable time.

{¶49} Revised Code 2151.414 provides a two-part analysis for courts to apply when determining a motion for permanent custody. The Agency must prove by clear and convincing evidence that, (1) granting permanent custody of the child to the agency is in the best interest of the child, and that (2) the child either (a) cannot be placed with either parent within a reasonable period of time for one of the statutorily enumerated reasons, which includes, *inter alia,* that the child has been in the temporary custody of the Agency for twelve or more months out of a consecutive twenty-two month period, or that (b) the child should not be placed with either

parent within a reasonable period of time. *In re S.G.*, 3d Dist. Defiance No. 4-16-13, 2016-Ohio-8403, ¶ 68.

{¶50} In this case the trial court made findings that the children could not be placed with their parents within any reasonable time *and* that the children had been in the custody of the Agency for twelve or more months out of the past twenty-two months. This Court has held previously that "when a trial court finds that R.C. 2151.414(B)(1)(d) [twelve of twenty-two] has been met and makes a best interest determination, it is not required to also determine that the children could not or should not be returned to any of the parents within a reasonable time under R.C. 2151.414(B)(1)(a)." *In re J.P.*, 3d Dist. Hancock Nos. 5-06-52, 5-06-53, 2007-Ohio-1903, ¶ 93. Here, the "twelve of twenty-two" requirement was clearly met, thus the trial court did not even have to make the superfluous finding that the children could not or should not be placed with their parents within a reasonable time.[10]

{¶51} Nevertheless, the trial court did make the additional finding that the children could not or should not be placed with their mother within a reasonable time. As stated previously, the record indicated that Marsh did not have an adequate home given who she was living with and that she could not support the children

---

[10] Marsh argues that the twelve of twenty-two month period should not be considered in this case because the timelines discussed in Assignment of Error no. 3 were not met. Marsh contends that the case would have to start over and that the number of months would begin anew. We have already found Marsh's related argument not well-taken under the third assignment of error, and we will not further address this issue.

without the aid of a third party. It was not clear that some of Marsh's problems were issues she would ever remedy, let alone within a reasonable period of time. Given the children's need for permanency and their adaptation to their living circumstances, we cannot find that the trial court erred in making the additional, superfluous finding.[11] Thus Marsh's second assignment of error is overruled.

*Conclusion*

**{¶52}** For the foregoing reasons Marsh's assignments of error are overruled and the judgments of the Defiance County Common Pleas Court, Juvenile Division, are affirmed.

***Judgments Affirmed***

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/jlr**

---

[11] Marsh does not argue that the record failed to support the trial court's determination that granting the Agency permanent custody was in the children's best interest; however, the record does support the trial court's determination.