[Cite as *In re J.D.*, 2021-Ohio-3822.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE J.D., ET AL. | : | |
| | : | No. 110507 |
| Minor Children | : | |
| | : | |
| [Appeal by L.W., Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 28, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD18902800, AD18902801, and AD18902802

***Appearances:***

Thomas Rein, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee* CCDCFS.

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant, L.W., Mother, appeals an order of the Juvenile Division of the Cuyahoga County Court of Common Pleas (the "juvenile court") terminating her parental rights and awarding permanent custody of her children, J.D., Y.W., and Z.W., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "agency"). She claims the following two errors:

1. The trial court's decision to deprive legal custody to Mother and to grant the agency's permanent custody motion was against the manifest weight of the evidence and was not clearly and convincingly supported by the evidence.

2. The trial court erred by granting the agency's motion for permanent custody against mother, as the agency failed to meet its burden as required under R.C. 2151.414.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} In February 2018, the CCDCFS filed a complaint alleging that J.D., Y.W., and Z.W. ("the children") were neglected and dependent. The complaint requested temporary custody, and CCDCFS filed a motion requesting predispositional temporary custody of the children to CCDCFS. Mother stipulated to the allegations in an amended complaint and, in March 2018, the juvenile court ordered the children placed in the predispositional temporary custody of CCDCFS. The court twice extended the term of temporary custody before CCDCFS filed a motion to modify temporary custody to permanent custody in January 2020.

{¶ 4} The juvenile court conducted a trial on the permanent custody motion in April 2021. Gabrielle Uhrin ("Uhrin"), an extended services social worker with CCDCFS, testified that she began working with the family in April 2018. According to Uhrin, each of the children has a different father, and Uhrin never interacted with any of the fathers because one of them was deceased, and the other two never responded to her attempts to communicate with them. (Apr. 21, 2021, tr. 8, 19-20.) Although the two living fathers were originally included in the case plans for

reunification, they were subsequently removed due to lack of communication, and neither of them are a party to this appeal. (Apr. 21, 2021, tr. 8-10.)

{¶ 5} The case plan originally required Mother to attend domestic violence classes, obtain housing, and undergo treatment for mental illness and substance abuse. There were allegations that Mother was a victim of domestic violence in previous relationships. However, after taking an assessment through Moore Counseling, the domestic violence portion of her case plan was removed because Mother was not currently in a violent relationship. (Apr. 21, 2021, tr. 10-11.)

{¶ 6} Mother has a history of mental illness and has been diagnosed with bipolar disorder, generalized anxiety, and post-traumatic stress disorder. (Apr. 21, 2021, tr. 11.) Uhrin testified that Mother received mental health treatment at Signature Health and was "medicine compliant" (Apr. 21, 2021, tr. 11.) Mother also consistently went to counseling. (Apr. 21, 2021, tr. 11.)

{¶ 7} According to Uhrin, Mother's "drug of choice" is cocaine, but she has also used marijuana at times. Mother admitted to Uhrin during the pendency of this case that she had recently taken ecstasy at a party. (Apr. 12, 2021, tr. 12.) Mother completed a drug and alcohol assessment at Moore Counseling and was prescribed intensive outpatient treatment, which Mother completed in early 2019. (Apr. 21, 2021, tr. 12-13.) Following the treatment, Mother maintained six months of sobriety before testing positive for cocaine, marijuana, and amphetamines in September 2020. (Apr. 21, 2021, tr. 13.) Mother also tested positive for cocaine and marijuana on April 5, 2021, approximately two weeks before the permanent custody trial on

April 21, 2021. (Apr. 13, 2021, tr. 13.) Mother told Uhrin she believed her urine sample taken on April 5, 2021, must have been mixed up with someone else's sample, and a subsequent test performed five days later was negative. (Apr. 21, 2021, tr. 13.) Uhrin explained, however, that "[e]ach screen is observed by the facility who does the screening." (Apr. 21, 2021, tr. 13.)

{¶ 8} Uhrin testified that Mother had a "long history of not having appropriate housing." (Apr. 21, 2021, tr. 15.) Mother moved "from relative's home to relative's home" until November 2020, when the agency verified that Mother had obtained housing. Uhrin visited the home and observed that "there was a lot of work that needed to be done," including construction and extensive cleaning. The house also needed to be tested for lead. (Apr. 21, 2021, tr. 15.) Mother produced a letter from a company indicating it had performed the lead test, but the form was not signed, and Uhrin was unable to investigate whether the test was legitimate because she received the letter the evening before trial. (Apr. 21, 2021, tr. 16.) Nevertheless, Mother removed the clutter and established gas and water service at the residence. (Apr. 21, 2021, tr. 16.)

{¶ 9} Uhrin testified that Mother initially visited the children regularly. However, Mother stopped visiting them in September 2019, after they had a "staffing" to discuss permanent custody. (Apr. 21, 2021, tr. 22.) According to Uhrin, Mother did not visit the children at all through the agency in 2020. However, Mother informed Uhrin that she resumed visits with the children without the agency supervision in August 2020.

**{¶ 10}** Uhrin testified she was concerned because they "don't have a long history of [Mother] visiting her kids and being there and bonding with them for a long period of time." (Apr. 21, 2021, tr. 28.) Uhrin was also concerned because Mother had three older children who were placed in permanent custody in Lake County, Indiana before she came to Ohio. (Apr. 21, 2021, tr. 26-28.) Mother also has a seventh child, born during the pendency of this case, who was adjudicated neglected and dependent and committed to the temporary custody of the agency due to Mother's unresolved substance abuse, mental health, and housing issues. At one time, Mother agreed to relinquish permanent custody of the children and turn them over to the custody of CCDCFS during a "staffing" in late 2019. (Apr. 21, 2021, tr. 32-33.)

**{¶ 11}** Finally, Uhrin testified that the children had been with their maternal great aunt since 2018. (Apr. 21, 2021, tr. 26.) The children are bonded to their great aunt, who meets all of their needs. According to Uhrin, they are thriving in her care. (Apr. 21, 2021, tr. 21.) The children, who are in second and third grade, are doing very well in school and do not require any special accommodations. (Apr. 21, 2021, tr. 21-22.) The children's maternal great aunt indicated she would adopt the children if CCDCFS were awarded permanent custody. (Apr. 21, 2021, tr. 26.) Based on Mother's history of inconsistent visitation, ongoing substance abuse, and lack of history providing stable housing, Uhrin believed an award of permanent custody would best serve the children's interests. (Apr. 21, 2021, tr. 28.)

{¶ 12} The guardian ad litem ("GAL"), Michael H. Murphy, provided a report, dated April 14, 2021, recommending that the court grant permanent custody of the children to CCDCFS. Murphy also stated at the hearing that after he submitted the GAL report, he visited Mother's home on April 19, 2021. According to Murphy, the home was appropriate, but there was no furniture except for an air mattress where Mother and her boyfriend sleep. (Apr. 21, 2021, tr. 40.) There were no beds or dressers for the children. Mother told Murphy that she intended to pick out furniture with the children. Murphy nevertheless recommended that the court award permanent custody of the children to CCDCFS due primarily to Mother's ongoing substance abuse and the fact that she has failed to demonstrate that she can provide a stable home for her children. (Apr. 21, 2021, tr. 42-43.) Murphy believed the maternal great aunt would provide the permanency the children need. He explained that "[t]his case has been ongoing now for three years and the minor children need permanency, they need closure, they need stability * * * ." He further stated, in relevant part:

> I do believe that if permanent custody is granted that these children will continue to thrive with the maternal great aunt because she's taken it upon herself to make sure that the minor children have everything they need.

(Apr. 21, 2021, tr. 43.)

{¶ 13} Based on the evidence presented at the hearing, the juvenile court terminated Mother's parental rights and ordered the children placed in the permanent custody of CCDCFS. The court found that the children had been in

agency custody for more than 12 months of a consecutive 22-month period as required by R.C. 2151.414(B)(1)(d). The court also concluded, pursuant to R.C. 2151.414(E), that the children could not, or should not, be placed with any of their parents within a reasonable time because Mother failed to remedy the conditions that led to the removal of the children in the first place, including her ongoing substance abuse. The juvenile court observed that Mother demonstrated a lack of commitment toward the children by failing to regularly visit and communicate with them when able to do so and that she showed an unwillingness to provide an adequate, permanent home for them. Finally, the court found that "a grant of permanent custody is in the best interests of the child(ren)."

{¶ 14} Mother now appeals the juvenile court's judgment.

## II. Law and Analysis

{¶ 15} In the first assignment of error, Mother argues the juvenile court's judgment awarding permanent custody of her children to CCDCFS is against the manifest weight of the evidence and was not clearly and convincingly supported by the evidence. In the second assignment of error, Mother argues the juvenile court erred by granting the agency's motion for permanent custody. Within both assigned errors, Mother contends the juvenile court's judgment is not supported by the evidence because the record demonstrates that Mother was compliant with her case plan. We, therefore, discuss these assigned errors together.

{¶ 16} A parent has a "'fundamental liberty interest' in the care, custody and management" of his or her child. *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d

1169 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The right to raise one's own child is "an essential and basic civil right." *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). Nevertheless, the right to raise one's own child is not absolute; it is "always subject to the ultimate welfare of the child[.]" *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 17} CCDCFS may obtain permanent custody by first obtaining temporary custody of a child and then filing a motion for permanent custody under R.C. 2151.413. *See In re M.E.*, 8th Dist. Cuyahoga No. 86274, 2006-Ohio-1837. There is no dispute that the proper procedure was followed in this case. When CCDCFS files a permanent custody motion under R.C. 2151.413 after obtaining temporary custody, the guidelines and procedures set forth under R.C. 2151.414 apply.

{¶ 18} R.C. 2151.414 sets forth a two-pronged analysis the juvenile court must apply when ruling on a motion for permanent custody. R.C. 2151.414(B) requires the court find, by clear and convincing evidence, that (1) granting permanent custody of the child to CCDCFS is in the best interest of the child, and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1).

{¶ 19} "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re C.B.*, 8th Dist. Cuyahoga No. 92775, 2011-Ohio-5491, ¶ 28, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 20} A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence." *In re G.W.*, 8th Dist. Cuyahoga No. 107512, 2019-Ohio-1533, ¶ 62, quoting *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 21} The juvenile court concluded, pursuant to R.C. 2151.414(B)(2), that the children could not, or should not, be placed with either parent within a reasonable time. In determining that a child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the trial court must consider the factors contained in R.C. 2151.414(E). If the court determines at a hearing that one or more of the factors set forth in R.C. 2151.414(E) exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent. *In re I.K.*, 8th Dist. Cuyahoga No. 96469, 2011-Ohio-4512, ¶ 8. The existence of any one of the factors is sufficient to determine that a child cannot be placed with a parent within a reasonable period of time. *In re C.C.*, 187 Ohio App.

3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶ 10 (8th Dist.), citing *In re William S.*, 75 Ohio St.3d 95, 99, 661 N.E.2d 738 (1996).

{¶ 22} In determining that the children could not be placed with any parent within a reasonable time, the juvenile court found, pursuant to R.C. 2151.414(E)(1), that

> following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the child's home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

(Lower case entries AD18902800, AD18902801, AD18902802, journalized Apr. 27, 2021, Apr. 27, 2021, and Apr. 29, 2021, respectively.)

{¶ 23} The juvenile court further found, pursuant to R.C. 2151.414(E)(2), that Mother's chronic mental illness or chemical dependency was "so severe that it makes [her] unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year * * *." (Lower case entries AD18902800, AD18902801, AD18902802, journalized Apr. 27, 2021, Apr. 27, 2021, and Apr. 29, 2021, respectively.)  Although Mother went six months without testing positive for drugs, Uhrin testified that Mother tested positive for cocaine and marijuana following the six months of sobriety, including a test performed two weeks before the permanent custody hearing.  Uhrin's undisputed testimony that Mother is still struggling with substance abuse supports the juvenile court's findings.

{¶ 24} The record shows, and the trial court further found, pursuant to R.C. 2151.414(E)(10) and (11), that the children's fathers either abandoned them or were deceased and that Mother previously had her parental rights involuntarily terminated with respect to other siblings. (Lower case entries AD18902800, AD18902801, AD18902802, journalized Apr. 27, 2021, Apr. 27, 2021, and Apr. 29, 2021, respectively.)

{¶ 25} Pursuant to R.C. 2151.414(E)(4), the trial court found that Mother showed a lack of commitment to her children by failing to regularly support, visit, or communicate with them when able to do so. (Lower case entries AD18902800, AD18902801, AD18902802, journalized Apr. 27, 2021, Apr. 27, 2021, and Apr. 29, 2021, respectively.) R.C. 2151.011(C) provides that "[f]or purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." Uhrin testified that Mother stopped visiting the children in September 2019, and did not resume visits until August 2020, a period of about 11 months. Thus, undisputed evidence supports the court's finding that Mother demonstrated a lack of commitment toward the children by failing to visit them. We, therefore, conclude that the trial court's findings under R.C. 2151.414(E) are supported by competent, credible evidence in the record. Based on these findings, the juvenile court was required to find that the children could not be placed with either of their parents within a reasonable time or should not be placed with either parent. *See, e.g., In re*

*C.H.*, 8th Dist. Cuyahoga Nos. 82258 and 82852, 2003-Ohio-6854, ¶ 58, citing *In re Glenn*, 139 Ohio App.3d 105, 113, 742 N.E.2d 1210 (8th Dist.2000.).

{¶ 26} The trial court's determination that permanent custody was in the children's best interest is also supported by clear and convincing evidence. In determining whether permanent custody is in the child's best interest pursuant to R.C. 2151.414(D)(1), the juvenile court must consider "all relevant factors," including, but not limited to (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed through the child's guardian ad litem depending on the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply.

{¶ 27} Although the juvenile court is required to consider each factor listed in R.C. 2151.414(D)(1), no one factor is to be given greater weight than the others. *In re T.H.*, 8th Dist. Cuyahoga No. 100852, 2014-Ohio-2985, ¶ 23, citing *In re Schaefe*r, 111 Ohio St. 3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Only one of the factors set forth in R.C. 2151.414(D)(1) needs to be resolved in favor of permanent custody. *In re A.B.*, 8th Dist. Cuyahoga No. 99836, 2013-Ohio-3818, ¶ 17.

{¶ 28} The Ohio Supreme Court recently held that

R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires. Although a reviewing court must be able to discern from the magistrate's or juvenile court's decision and the court's judgment entry that the court satisfied the statutory requirement that it consider the enumerated factors, we may not graft onto the statute a requirement that the court include in its decision a written discussion of or express findings regarding each of the best-interest factors.

*In re A.M.*, Slip Opinion No. 2020-Ohio-5102, ¶ 31.

{¶ 29} The weight given to the R.C. 2151.414(D)(1) factors is within the juvenile court's discretion. *In re P.B.*, 8th Dist. Cuyahoga Nos. 109518 and 109519, 2020-Ohio-4471, ¶ 76, citing *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. We, therefore, will not disturb the juvenile court's determination of a child's best interest absent an abuse of discretion. *Id.* "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, Slip Opinion No. 2020-Ohio-6699, ¶ 19. An abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.). When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

{¶ 30} With respect to 2151.414(D)(1)(c), which deals with the children's custodial history, the juvenile court observed that the children had been in agency

custody for more than 12 months of a consecutive 22-month period. Indeed, the record showed that Mother stopped visiting the children for almost an entire year of the three years the children were in temporary custody. There was also evidence that Mother at one time agreed to relinquish permanent custody of her children to CCDCFS.

{¶ 31} With respect to R.C. 2151.414(D)(1)(a), which deals with the children's interrelationship with parents and caregivers, the evidence shows that the children had a more consistent relationship with their maternal great aunt than with Mother. The children had been living together with their maternal great aunt for approximately three years at the time of the permanent custody hearing. And, according to Uhrin, the children were "very happy" living with her, attended the same school, and were doing well. (Apr. 21, 2021, tr. 21.)

{¶ 32} R.C. 2151.414(D)(1)(d) concerns the children's need for a legally secure and permanent home. At the time of the permanent custody hearing, the children had been in agency custody for approximately three years. And, as previously stated, the children could not, or should not, be placed with one of their parents within a reasonable time. Therefore, the undisputed evidence showed that the children needed a legally secure placement, and their maternal great aunt was willing to adopt all three children and provide them a permanent home. The GAL, who represents the children's wishes as provided in R.C. 2151.414(D)(1)(b), also testified that "this case has been ongoing for three years and the minor children need permanency, they need closure, they need stability." (Apr. 21, 2021, tr. 43.) For that

reason, and because Mother had not remedied the problems that required removal of the children in the first place, the GAL recommended that awarding permanent custody to the agency was in the children's best interest.

{¶ 33} R.C. 2151.414(D)(2)(d) requires the court to consider whether "[p]rior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child." No relative or interested person had filed a motion for legal custody of the children prior to the dispositional hearing in this case. The maternal great aunt, who had temporary custody of the children, did not seek legal custody because she wanted to adopt the children. (Apr. 21, 2021, tr. 26, 33.) Therefore, there were no relatives interested in legal custody of the children, and this factor was satisfied at the time of trial. (Apr. 21, 2021, tr. 42.)

{¶ 34} Although Mother complied with many aspects of her case plan, "[a] parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification." *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶ 25 (8th Dist.). In *In re C.C.*, we explained:

> The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal. *In re Shchigelski* (Oct. 20, 2000), 11th Dist. Geauga No. 99-G-2241, 2000 Ohio App. LEXIS 4900; *In re McKenzie* (Oct. 18, 1995), 9th Dist. Wayne No. 95CA0015, 1995 Ohio App. LEXIS 4618. A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed — the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. *In re J.L.*, 8th Dist. [Cuyahoga] No. 84368, 2004 Ohio 6024, at ¶ 20; *In re Mraz*, 12th Dist. [Brown] Nos. CA2002-05-011, CA2002-07-014, 2002 Ohio 7278.

The record shows that Mother is still struggling with substance abuse, stopped visiting the children for almost a year while the children were in temporary custody, and failed to demonstrate that she could reliably provide a secure and stable home for the children. The juvenile court made the findings required by R.C. 2151.414 before granting CCDCFS permanent custody of the children, and the findings are supported by clear and convincing evidence. We, therefore, overrule both assignments of error.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
SEAN C. GALLAGHER, J., CONCUR